[Cite as *In re K.S.*, 2013-Ohio-216.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

IN THE MATTER OF:                    :
                                                                    CASE NO. CA2012-07-050
                K.S.                                 :
                                                                    O P I N I O N
                                                 :                1/28/2013

                                                 :

                                                 :

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2007 JG 14571

Cathy R. Cook, 114 East Eighth Street, Cincinnati, Ohio 45202, for appellant

Donald W. White, 237 Main Street, Batavia, Ohio 45103, for appellee

**S. POWELL, J.**

{¶ 1} Appellant, Denise Hale ("Mother"), appeals a decision of the Clermont County Court of Common Pleas, Juvenile Division, modifying the terms of a shared parenting plan and designating appellee, Jeffrey Scott ("Father"), as the residential parent of the parties' minor child. For the reasons set forth below, the trial court's judgment is affirmed.

{¶ 2} In February 2008, Mother and Father entered into a shared parenting agreement regarding their daughter, K.S., who was born October 16, 2006. Under the terms of the plan, both parties were designated residential parents, with Father receiving parenting

time with K.S. on alternating weekends and weeknights.

{¶ 3} In November 2011, Father moved the court to modify the shared parenting plan and to designate him as the sole residential parent of K.S. Father also asked for a temporary ex-parte order to prevent Mother from leaving Clermont County with the child. As a basis for the motions, Father stated that Mother planned to move to Tennessee to live with her boyfriend, and that she had threatened to take K.S. with her. Father also explained that K.S.'s support system, including her grandparents and relatives, resided in Clermont County, and that it would not be in the child's best interest to take her out of her elementary school and her current living and social environments.

{¶ 4} The trial court subsequently scheduled a hearing on the matter for December 19, 2011. Five days before the hearing, counsel for Mother entered an appearance and requested a continuance. Rather than continue the hearing, the court ordered the parties to participate in mediation. After mediation failed in March 2012, the court scheduled a hearing for June 4, 2012. However, in April 2012, counsel for Mother moved to withdraw, and the court granted counsel's motion on May 21, 2012.

{¶ 5} The hearing occurred on June 4, 2012 as scheduled. Prior to the start of the hearing, the court noted the appearance of the parties. While Father appeared with counsel, the court asked "Ms. Hale, you're no longer represented by counsel, correct?" Mother responded "No." The court then explained that it would address Father's motion to modify the shared parenting plan, as well as Father's two motions for contempt, which alleged that Mother had violated the court's order regarding Father's parenting time on several occasions. The court then asked Mother, "And you're ready to proceed to trial today?" Mother responded "That's fine." Next, the court allowed Father's counsel to make an opening statement. However, rather than subsequently permitting Mother to make an opening statement, the court immediately allowed Father to call his first witness. At that time, Father

- 2 -

called Mother on cross-examination.

{¶ 6} During cross-examination, Father questioned Mother regarding a criminal charge for prostitution in Indiana from February 2011. Mother confirmed the charge and indicated that it was still pending. Father then asked Mother about a summons on a complaint for operating a massage parlor without a license, which listed an incident of "commercial sex." Mother stated that her name appeared on the summons, but denied giving massages without a license. Father also presented a photograph of Mother from a magazine, which advertised escort and prostitution services. Mother conceded that it was her photograph, but explained that her ex-boyfriend posted the picture in the magazine without her consent, and that he was facing criminal charges for doing so. Father also briefly asked Mother about a website advertising Mother's pornographic films, but it was unclear as to whether Mother endorsed the website.

{¶ 7} Counsel then called Father on direct examination. Father testified that in November 2011, Mother informed him that she was moving to Tennessee to be with her boyfriend, and that she was taking K.S. with her. Father explained that he was very concerned that K.S. would be exposed to improper influences in Tennessee. Father also presented exhibits showing emails between the parties that revealed Mother's continued unwillingness to facilitate Father's parenting time. Father stated that on one occasion, Mother had lied about K.S.'s whereabouts, telling Father that K.S. was in school, when in reality, Mother was still on vacation with the child. Father also testified that Mother was out of state during 90 percent of her scheduled parenting time, and that Mother's family or friends would babysit K.S. while Mother was away. Father further indicated that if he was the sole residential parent, K.S. would have her own bedroom at her grandparent's house, where Father lived, and that her grandparents would babysit K.S. when Father was at work. Father also testified that K.S. would remain in the same elementary school, where she had many

friends.

{¶ 8} At this point in Father's testimony, the record reflects that Mother became agitated and began making "dramatic" gestures in court. The following exchange took place as a result:

> THE COURT: Please stop with the dramatic * * *
>
> [MOTHER]: Can I butt in?
>
> THE COURT: You're going to in a minute. The way this works * * * stop * * *
>
> [MOTHER]: Okay, well, I want a lawyer so * * *
>
> THE COURT: Sorry, you had a lawyer and you said you were ready to proceed.
>
> [MOTHER]: No, my lawyer quit on me and I have a paper stating that I have a right to appeal it in the courtroom today.
>
> THE COURT: You don't have the right to appeal * * *
>
> [MOTHER]: Yea, it came in the mail * * *
>
> * * *
>
> THE COURT: Ma'am, the way this works is I talk, you listen. I'll let you talk and I'll listen. If you interrupt me one more time I'm going to get the deputy.
>
> [MOTHER]: Well, I'm going to leave because I want a lawyer, so * * *
>
> THE COURT: If you leave they're going to win by default. You indicated a half hour ago you were going to proceed without an attorney.
>
> [MOTHER]: No, you didn't ask me, you said "Are you ready for trial", and you didn't * * *
>
> THE COURT: Ma'am, the first thing I told you * * *
>
> [MOTHER]: Then I'm going to leave, you can go ahead, that's fine, I'll just appeal it. Have a good day.

{¶ 9} Mother subsequently exited the courtroom, at which time counsel for Father

rested and submitted Father's exhibits to the court. The court accepted the exhibits and granted emergency temporary custody to Father in order to prevent Mother from taking K.S. out of state before the court could render a decision.

{¶ 10} The court subsequently issued its order, finding that there had been a substantial change in circumstances that warranted a modification in parental rights and responsibilities, and that it was in K.S.'s best interest to designate Father as the residential parent. The court adopted a standard parenting plan and ordered that Mother have supervised parenting time.

{¶ 11} Mother timely appeals, raising eight assignments of error.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ERRED BY PROCEEDING WITH THE CUSTODY DETERMINATION WITHOUT A PROPER WAIVER OF THE RIGHT TO COUNSEL BY APPELLANT-MOTHER.

{¶ 14} Mother first argues that the trial court erred in proceeding with the reallocation hearing on June 4, 2012 without obtaining a proper waiver of counsel. Specifically, Mother claims that the court failed to comply with Juv.R. 4(A) and R.C. 2151.352.

{¶ 15} Pursuant to Juv.R. 4(A):

> Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a trial court proceeding. * * * This rule shall not be construed to provide for a right to appointed counsel in cases in which that right is not otherwise provided for by constitution or statute.

{¶ 16} Additionally, R.C. 2151.352 states, in pertinent part:

> A child, the child's parents or custodian, or any other person in loco parentis of the child is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of the Revised Code. If, as an indigent person, a party is unable to employ counsel, the party is entitled to have

counsel provided for the person pursuant to Chapter 120. of the Revised Code except in civil matters in which the trial court is exercising jurisdiction pursuant to division (A)(2), (3), (9), (10), (11), (12), or (13); (B)(2), (3), (4), (5), or (6); (C); (D); or (F)(1) or (2) of section 2151.23 of the Revised Code. If a party appears without counsel, the court shall ascertain whether the party knows of the party's right to counsel and of the party's right to be provided with counsel if the party is an indigent person. [sic]

{¶ 17} According to Mother, these rules required the court to explicitly advise her of her right to counsel prior to the hearing. Mother claims that the court did not sufficiently comply with these rules by simply confirming that she was no longer represented by counsel and by asking "And you're ready to proceed to trial today?"

{¶ 18} Conversely, Father argues that a party can waive her right to counsel as provided for in R.C. 2151.352 by her conduct. Father urges us to follow the holdings in *In re A.S.*, 8th Dist. Nos. 94098, 94104, 2010-Ohio-1441, and *In re Rachal G.*, 6th Dist. No. L-02-1306, 2003-Ohio-1041. However, these cases involved the *termination* of parental rights, whereas here, the court simply reallocated the parties' parental rights and responsibilities. That said, we find these cases instructive in addressing Mother's argument.

{¶ 19} In both *A.S.* and *Rachal*, the courts of appeals held that "where a parent fails to maintain contact with counsel, fails to appear for scheduled hearings despite receiving notice of such, and fails to cooperate with counsel and the court, the court may infer that the parent has waived his or her right to counsel * * *." *A.S.* at ¶ 27; *Rachal* at ¶ 14. In order to ascertain whether a waiver may be inferred, "the court must take into account the total circumstances of the individual case, including the background, experience and conduct of the parent." *Rachal* at ¶ 14. *See also In re S.M.*, 8th Dist. No. 81566, 2004-Ohio-1243, ¶ 23.

{¶ 20} Using these cases as a guideline, we find that, under the total circumstances of this case, Mother impliedly waived her right to employ counsel, and therefore the trial court did not err in proceeding with the June 4, 2012 hearing without further advisement. A review

of the record indicates that Mother first obtained counsel in 2008 to assist in drafting the shared parenting plan with Father, and that she hired a different attorney in 2011 after Father moved to modify the parenting plan. The record also shows, and it is undisputed by Mother, that her second attorney requested to withdraw in April 2012, over two months prior to the reallocation hearing scheduled for June 4, 2012. However, Mother did nothing over the course of those two months, even though she had also received notice from the court that all further proceedings would be held with or without counsel for the parties.

{¶ 21} Additionally, when Mother appeared at the hearing, the court confirmed that Mother was no longer represented by counsel and asked whether she was ready to proceed that day. It was not until later, when Father produced a great deal of unfavorable evidence against Mother, that she interrupted the proceeding, indicated that she wanted an attorney, and threatened to leave the hearing. The court informed Mother that if she left, Father would win, to which Mother responded, "you can go ahead, that's fine, I'll just appeal it."

{¶ 22} Based on Mother's involvement in the case since 2008, her experience with her two previous attorneys, her receipt of Father's reallocation and contempt motions, as well as notice that the proceedings would continue with or without counsel for the parties, we find that Mother was aware of her statutory right to employ counsel. Mother's statements and conduct during the hearing reflects that she waived that right, and that her request for an attorney was merely an attempt to stall the proceeding, rather than a misunderstanding of her right to representation. These facts also lead us to reject Mother's contention that she was unaware that her parental rights were at stake during the June 4, 2012 hearing.

{¶ 23} Under these circumstances, we find that Mother impliedly waived her right to counsel as provided for under Juv.R. 4 and R.C. 2151.352, and that the trial court did not err

in conducting the hearing in the absence of counsel for Mother.[1] *See S.M.*, 2004-Ohio-1243 at ¶ 23.

{¶ 24} Mother's first assignment of error is overruled.

{¶ 25} Assignment of Error No. 2:

{¶ 26} THE TRIAL COURT ERRED BY FAILING TO ALLOW APPELLANT-MOTHER TO MAKE AN OPENING STATEMENT WHICH VIOLATED HER RIGHT TO A FAIR TRIAL UNDER THE DUE PROCESS CLAUSES OF THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶ 27} Assignment of Error No. 3:

{¶ 28} THE TRIAL COURT ERRED BY ALLOWING APPELLEE-FATHER TO INTRODUCE EXHIBITS WITHOUT PROPERLY IDENTIFYING THEM.

{¶ 29} Assignment of Error No. 4:

{¶ 30} THE TRIAL COURT ERRED BY ALLOWING HEARSAY TO BE ADMITTED INTO EVIDENCE WHICH VIOLATED APPELLANT-MOTHER'S RIGHTS TO A FAIR TRIAL UNDER THE DUE PROCESS CLAUSES OF THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶ 31} For ease of analysis, we will address Mother's second, third, and fourth assignments of error together.

{¶ 32} In her second assignment of error, Mother claims that the trial court violated her due process rights when it failed to give her an opportunity to make an opening statement during the June 4, 2012 hearing. In support of her argument, Mother cites *Steines v.*

---

1. We also note that this case is a civil matter brought pursuant to R.C. 2151.23(F)(1). Under R.C. 2151.352, Mother did not have a right to appointed counsel. Because the additional, unarticulated inquiries in R.C. 2151.352 pertain to appointment safeguards, we see no error in the absence of further questions by the court on this issue. *See Burton v. Caudill*, 12th Dist. No. CA2009-12-047, 2010-Ohio-4946, ¶ 34; *Botticher v. Stollings*, 3rd Dist. No. 11-99-08, 1999 WL 1063621 (Nov. 4, 1999). *See also* Juv.R. 4(A).

*Weddell*, 11th Dist. No. 3958, 1988 WL 64757 (June 17, 1988). However, *Steines* was a small claims case involving R.C. 2315.01, which provides that each party may make an opening statement "[w]hen the *jury* is sworn * * *." (Emphasis added.) R.C. 2315.01(A). Here, the court heard the case without a jury. Furthermore, a juvenile court action is not governed by R.C. 2315.01, but rather R.C. 2151.35(A)(1), which provides that "the juvenile court may conduct its hearings in an informal manner * * *."

{¶ 33} In this case, the court permitted Father's counsel to make an opening statement, but did not offer Mother the same opportunity before allowing Father to call his first witness. While this was not necessarily the best practice, Mother did not object to the informal manner of the proceeding. Further, we do not see how Mother was prejudiced by the court's failure to offer her the opportunity to make an opening statement. First, opening statements are not evidence, and they exist simply to provide the trier of fact with a preview of the case. *See State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 157. Secondly, when Mother voluntarily exited the hearing, she forfeited her chance to present actual evidence, which was a decision far more damaging to her case than the court's failure to permit an opening statement. Accordingly, Mother's second assignment of error is overruled.

{¶ 34} In her third and fourth assignments of error, Mother claims that the trial court erred in admitting certain evidence into the record. Specifically, Mother argues that the court erroneously admitted Father's exhibits, as they were not properly authenticated, and that the court should not have considered Father's testimony containing inadmissible hearsay. However, since Mother chose to exit the courtroom rather than object to the admissibility of this evidence, she has waived these errors and cannot now present them for consideration on appeal.

{¶ 35} Mother's second, third, and fourth assignments of error are overruled.

{¶ 36} Assignment of Error No. 5:

{¶ 37} THE TRIAL COURT ERRED BY FINDING A CHANGE OF CIRCUMSTANCES AND AWARDING CUSTODY TO FATHER WITHOUT A FULL HEARING[.]

{¶ 38} Assignment of Error No. 6:

{¶ 39} THE TRIAL COURT ERRED BY FINDING THAT THERE WAS A CHANGE OF CIRCUMSTANCES WARRANTING TERMINATION OF THE SHARED PARENTING PLAN[.]

{¶ 40} Assignment of Error No. 7:

{¶ 41} THE TRIAL COURT ERRED IN GRANTING THE STANDARD PARENTING ORDER TO APPELLANT-MOTHER.

{¶ 42} Assignment of Error No. 8:

{¶ 43} THE TRIAL COURT ERRED BY LIMITING APPELLANT-MOTHER TO SUPERVISED PARENTING TIME AT HER PARENT'S HOME [sic].

{¶ 44} In her fifth, sixth, seventh, and eighth assignments of error, Mother challenges the trial court's decision to reallocate parental rights and responsibilities regarding K.S. For ease of discussion, we will address these assignments of error out of order.

{¶ 45} In her sixth assignment of error, Mother claims that the trial court erred by finding that a change of circumstances occurred that warranted a reallocation of parental rights and responsibilities. This argument lacks merit.

{¶ 46} According to R.C. 3109.04, a change of circumstances must occur before a court may modify parental rights and responsibilities. *See Preece v. Stern*, 12th Dist. No. CA2009-09-019, 2010-Ohio-857, ¶ 10. "R.C. 3109.04 does not define 'changes in circumstances'; however, courts have generally held the phrase to note 'an event, occurrence, or situation which has a material and adverse effect upon a child.'" *Id.*, quoting *Lindman v. Geissler*, 171 Ohio App.3d 650, 2007-Ohio-2003, ¶ 33 (5th Dist.).

{¶ 47} A trial court's decision reallocating parental rights and responsibilities will be

reversed only upon a showing of an abuse of discretion. *Stern* at ¶ 13; *Davis v. Flickinger*, 77 Ohio St.3d 415 (1997). An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Stern* at ¶ 13, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 48} After reviewing the record, we find that the trial court did not abuse its discretion in finding that the following evidence constituted a change of circumstances. First, the court noted that since adopting the shared parenting order, Mother had made plans to move to Tennessee with K.S., where they would live with Mother's boyfriend. The court also considered Father's testimony that if K.S. lived in Ohio with him, the child would remain in the same home with Father and her grandparents, and that she would attend the same elementary school.

{¶ 49} While a residential parent's relocation, standing alone, is not sufficient to be considered a change of circumstances, we have previously held that a change in circumstances may occur if the parent's out-of-state move significantly impacts the child's welfare by removing the child from extended family with whom he or she has "well-established, ongoing relationships * * *." *Zinnecker v. Zinnecker*, 133 Ohio App.3d 378, 385 (12th Dist.1999), citing *Thieken v. Spoerl*, 12th Dist. No. CA95-11-186, 1996 WL 263583 (May 20, 1996). Here, the record indicates that K.S. was accustomed to living with Father and her grandparents in Ohio, and that her grandparents played a significant role in raising K.S. Further, Mother did not present any evidence that K.S. had extended family in Tennessee, or that the child had any connection to the state whatsoever. In fact, if Mother took K.S. out of state, the child would clearly have had to adjust to a new school, new neighbors, new friends, and a new community.

{¶ 50} Further, even if Mother's move to Tennessee and its impact on K.S. were insufficient to justify the court's finding of a change in circumstances, there was also evidence

that, since the agreed order, Mother had taken K.S. out of state and lied about her whereabouts, had denied Father's parenting time on several occasions, and had been charged with engaging in illicit prostitution activities.

{¶ 51} Given this evidence, we find that the trial court did not abuse its discretion in finding that a change of circumstances occurred, which warranted further inquiry into whether a modification of parental rights and responsibilities was in K.S.'s best interest. While Mother does not challenge the trial court's best interest findings, we find no abuse of discretion, where the court analyzed the evidence adduced at the reallocation hearing and applied that evidence to the factors in R.C. 3109.04(F), and the majority of the factors weighed against Mother and in favor of Father. Accordingly, Mother's sixth assignment of error is overruled.

{¶ 52} In her seventh and eighth assignments of error, Mother argues that the trial court erred in adopting a standard parenting plan and in ordering supervised parenting time for Mother. Mother also claims that the court wholly failed to consider the factors set forth in R.C. 3109.051(D) prior to rendering these decisions.

{¶ 53} First, we are unable to find that the trial court erred in adopting a standard parenting order, where Mother voluntarily exited the courtroom prior to the conclusion of the hearing and did not present a case for a different order. Under these circumstances, the court had very little choice but to adopt a standard parenting plan. Further, while the court did not specifically cite R.C. 3109.051(D) in its decision, the 16 factors listed therein essentially mirror the factors set forth in R.C. 3109.04(F), which the court did explicitly consider. Such factors included K.S.'s interaction with her parents and grandparents, the mental and physical health of the parties, Mother's unwillingness to facilitate Father's parenting time, Mother's plans to move out of state, as well as K.S.'s school schedule and her adjustment to her home and school environments. *See* R.C. 3109.051(D)(1)-(6), (9)-(11), (13), (14), (16); R.C. 3109.04(F)(1)(b), (c), (d), (e), (f), (h), (i), (j); (F)(2)(d). Moreover, even if

the court had considered the remaining factors in R.C. 3109.051(D) that did not overlap with R.C. 3109.04(F), we find that the court's parental rights determination would have been the same. The remaining factors in R.C. 3109.051(D) are as follows,

> (7) The health and safety of the child;
>
> (8) The amount of time that will be available for the child to spend with siblings;
>
> * * *
>
> (12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication;
>
> * * *
>
> (15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

**{¶ 54}** Here, there is no evidence that K.S.'s health and safety were in jeopardy while she was under Father's care, or that the child's grandparents or any other nonparent requesting companionship or visitation had a criminal history of child abuse or neglect.

**{¶ 55}** In sum, given the trial court's numerous findings, which were supported by competent, credible evidence, we find no abuse in discretion in the court's failure to specifically cite R.C. 3109.051(D) in rendering its decision.

**{¶ 56}** We also find that the trial court did not abuse its discretion in ordering supervised parenting time for Mother, where it would not only prevent Mother from temporarily taking K.S. out of state, as she had done in the past, but it would also prevent Mother from relocating the child to Tennessee on a more permanent basis, which she planned to do shortly before the June 4, 2012 hearing. Thus, Mother's seventh and eighth

assignments of error are overruled.

{¶ 57} In her fifth assignment of error, Mother claims that the trial court did not hold a full evidentiary hearing prior to finding a substantial change in K.S.'s circumstances, because the court ended the hearing without asking Father to identify all of his exhibits. This argument also lacks merit.

{¶ 58} There is nothing in the record indicating that the court did not hold a full hearing, only that Mother deliberately ceased participation in the hearing prior to its conclusion. Additionally, as previously discussed, Mother failed to object to the admissibility of Father's exhibits, therefore she cannot claim error in the court's treatment thereof.

{¶ 59} Mother also believes that the court entered a "default type judgment," based on its statement that Father would "win by default" if Mother left the hearing. While it would have been more prudent to inform Mother that Father would continue to present evidence if she left the hearing, there is no evidence that the trial court actually entered a "default" judgment as soon as Mother exited the courtroom. Instead, the record reflects that the court held a full evidentiary hearing on the merits, collected all of the evidence, and subsequently reallocated the parties' parental rights and responsibilities after applying the evidence to the pertinent statutes. Accordingly, Mother's fifth assignment of error is overruled.

{¶ 60} Having fully considered and rejected each of Mother's arguments, we affirm the decision of the trial court.

{¶ 61} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.